IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC WIEST,

               Plaintiff,

      v.

DELAWARE VALLEY WHOLESALE
FLORIST, INC.,

               Defendant.

Civil Action No. 1:18-cv-3427-JMC

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Defendant Delaware Valley Floral Group, Inc. ("Defendant"), misnamed in the complaint as Delaware Valley Wholesale Florist, Inc., by and through its undersigned counsel, in support of its motion to dismiss and/or for summary judgment, states as follows:

## I.  INTRODUCTION

Plaintiff filed this lawsuit on November 6, 2018 alleging that Defendant violated the FLSA by failing to properly compensate him for overtime hours allegedly worked during the course of his employment.  However, Plaintiff's Complaint fails to state a claim cognizable under the FLSA because Plaintiff's position with Defendant was exempt from the overtime requirements of the FLSA under the Motor Carrier Act exemption.  Moreover, Defendant has compensated Plaintiff for all hours worked over the course of his employment.  Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

## II.  STATEMENT OF FACTS

Plaintiff worked for Defendant from roughly May of 2012 until about April 30, 2018 as a delivery driver transporting and delivering Defendant's product to its customers.  *See* Compl. ¶

10.[1]  Plaintiff primarily drove a Hino 16-foot box truck, which has a gross vehicle weight ("GVW") of more than 10,00 pounds.  *See* Declaration of Jenny Basis, attached hereto as Exhibit 1, at ¶ 3.  Occasionally, Plaintiff drove various Mitsubishi 16-foot box trucks, which are also over 10,000 GVW.  *See id.* at ¶ 4.  Defendant purchases floral products from all over the world.  *Id.* at ¶ 5.  Most of their products are brought in from farms in South America into Florida.  *Id.* From Florida, they are transported to their headquarters in New Jersey.  *Id.* at ¶ 6.  Other product is shipped by truck from farms in California, Mexico, New York, and other locales to New Jersey.  *Id.* at ¶ 7.  The inventory is kept in New Jersey until it is sold.  *Id.* at ¶ 8.  As customer orders come in, employees in New Jersey select and pack the product for its final destination.  *Id.* at ¶ 9.  Once packed, the completed orders get sent to various distribution centers via tractor trailers.  *Id.* at ¶ 10.  The product is offloaded, sorted, and put on to delivery trucks at the distribution centers the same day.  *Id.* at ¶ 11.  Delivery drivers then deliver the product to the customers, which are primarily retail florists.  *Id.* at ¶ 12.  Plaintiff drove a route that originated at a distribution center in Jessup, Maryland and covers the western peninsula of Maryland.  *Id.* at ¶ 13.

From the beginning of his employment until about March 1, 2017, Plaintiff typically and customarily worked about fifty (50) hours per week, and as many as seventy (70) hours per week during peak season.  *See* Compl. ¶ 11.  Over the course of Plaintiff's employment, Defendant paid Plaintiff at a rate between $163 and $168 per day for all hours worked.  *See* Compl. ¶ 14.

---

[1] For purposes of this motion only, the facts pled in the Amended Complaint are taken as true.  However, Defendant reserves its right to challenge the facts during the pendency of this litigation

### III.  ARGUMENT

**A.**     **Legal Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The complaint needs "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555).

Under Rule 56(a) of the Federal Rule of Civil Procedure, the Court shall grant summary judgment where the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing such a motion, the Court views the facts in the light most favorable to the nonmoving party, with all reasonable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council*

*No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991); *Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-411-BR, 2012 WL 1596726, at *3 (E.D.N.C. May 7, 2012), aff'd, 489 F. App'x 709 (4th Cir. 2012) (quoting same).

**B.     Plaintiff Was Exempt from the FLSA Overtime Requirement Under the Motor Carrier Act**

The FLSA requires covered employers to pay their employees a minimum wage, which is currently $7.25 per hour.  29 U.S.C. § 206(a).  Covered employers must also pay their employees an overtime rate of one and one-half times the regular rate of pay for each hour worked in excess of forty per week.  *Id.* at § 207(a); *Helfand v. W.P.I.P., Inc.*, 165 F. Supp. 3d 392, 396 (D. Md. 2016) (citing same).  However, the overtime provisions of the FLSA do not apply to any employee who is covered by the Motor Carrier Act ("MCA") exemption.  29 U.S.C. § 213(b)(1); *Buckner*, 2012 WL 1596726, at *3.  An employer is not required to pay overtime wages to employees who fall within that exemption.  *Id.*  Plaintiff's position with Defendant was exempt from the FLSA overtime requirements under the MCA and accordingly, his claim fails.

The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  *Id.* at *4 (quoting 29 U.S.C. § 213(b)(1)).  Section 31502 provides the Secretary of Transportation with the authority to "prescribe requirements for ... qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."  49 U.S.C.A. § 31502(b)(2).  This grant of jurisdiction is limited, in pertinent part, to transportation in interstate commerce ."  *Tews v. Renzenberger, Inc.*, 592 F. Supp. 2d 1331, 1343 (D. Kan. 2009) (citing 49 U.S.C. § 13501); *see also* 29 C.F.R. § 782.2(a).

The MCA was amended in 2008 by the SAFETEA–LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21 (2008).  Now, in order to establish the applicability of the MCA exemption, an employer must demonstrate that 1) it is a motor carrier or, as here, a motor private carrier, under the MCA; and 2) that the employee's employment duties involved the safety of operation of motor vehicles weighing at least 10,001 pounds in interstate commerce.[2]  *Buckner*, 2012 WL 1596726, at *4 (citing *Dalton v. Sabo, Inc.*, Civ. No. 09–358–AA, 2010 WL 1325613, at *3 (D. Or. Apr. 1, 2010).

Here, the MCA exemption clearly applies to Plaintiff.  First, Defendant is a motor private carrier under the MCA.  The MCA defines "motor private carrier" as "a person,[3] other than a motor carrier, transporting property by motor vehicle when--(A) the transportation is as provided in section 13501 of this title[4]; (B) the person is the owner, lessee, or bailee of the property being

---

[2] The Act also provides a small vehicle exception whereby the exemption also applies to employees operating or affecting the safety of motor vehicles weighing up to 10,000 pounds in transportation on public highways in interstate or foreign commerce, when the vehicles are 1) designed and used to transport more than eight passengers including the driver for pay; 2) designed or used to transport more than fifteen passengers, including the driver, without compensation; or 3) used in transporting hazardous material, requiring placarding under regulations prescribed by the Secretary of Transportation.  These other bases for application of the exemption are not applicable here.

[3] A "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C.A. § 1.

[4] Section 13501 provides:
> The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier--
> (1) between a place in--
> (A) a State and a place in another State;
> (B) a State and another place in the same State through another State;
> (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
> (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
> (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and
> (2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.
49 U.S.C.A. § 13501

transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C.A. § 13102(15).

It is clear from the face of the Complaint that Plaintiff's employment activities for Defendant "affect safety of operation" as required by the MCA. *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1107 (4th Cir. 1997) ("[T]he critical consideration in determining whether the Motor Carrier Act governs a motor carrier employee and so exempts him from FLSA is whether that employee's activities affect safety of operation.") (citation and internal quotation marks omitted). Obviously, "[t]he duties of drivers affect safety of operation...." *Mayan v. Rydbom Exp., Inc.*, Civ. A. No. 07–2658, 2009 WL 3152136, at *3 (E.D. Pa. Sept. 30, 2009) (citing Levinson, 330 U.S. at 664–65); *see also Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783, 786 (6th Cir. 1982) ("It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle."). Moreover, the trucks that Plaintiff drove, both regularly and occasionally, weighed at least 10,001 pounds. *See* Exhibit 1, Basis Decl. at ¶¶ 3-4.

Finally, Plaintiff was undoubtedly involved in interstate commerce. As a delivery driver, he completed the final leg of delivering Defendant's product, which travels nationwide and often internationally. *Buckner*, 2012 WL 1596726, at *5 (finding that drivers were involved in interstate commerce where "they pick up and deliver goods that travel both nationwide and worldwide, and they typically complete either the initial or final legs of the packages' movement throughout the country and around the world"). It is inconsequential that Plaintiff's route was all within the State of Maryland. The product originates all over the world. Moreover, from the time the customer places an order, at a minimum, the product is traveling from New Jersey to Maryland. *See, e.g., id.* ("While plaintiff's driving duties typically take place entirely within the

state of North Carolina, the law is clear that he is still engaged in interstate commerce for the

purposes of the MCA exemption" because the packages plaintiff was delivering move

"throughout the country and around the world") (internal citations omitted); *Collins v. Heritage*

*Wine Cellars, Ltd.*, 589 F.3d 895, 896–98 (7th Cir. 2009) (finding that drivers' transportation of

wine that took place solely in the state of Illinois nevertheless constituted part of an "entire

journey" in interstate commerce where "a shipper transports his product across state lines for sale

by him to customers in the destination state, and the product undergoes no alteration during its

journey to the shipper's customer, and interruptions in the journey that occur in the destination

state are no more than the normal stops or stages that are common in interstate sales, such as

temporary warehousing …"); *Shoemaker v. UPS, Inc.*, No. 1:10–CV–185–EJL–CWD, 2011 WL

836998, at *8 (D. Idaho Feb. 10, 2011) (report and recommendation) ("UPS package car drivers,

even though they may be driving intrastate, are involved in interstate commerce because they are

on the last leg of the package's journey from its original destination to its final delivery place."),

*adopted*, 2011 WL 863015 (D. Idaho Mar. 9, 2011).

Thus, because he meets the requirements of the MCA, Plaintiff is exempt from the

overtime requirements of the FLSA and cannot set forth a claim for unpaid overtime wages.

Moreover, Plaintiff was compensated for all hours worked.  Plaintiff claims he received daily

rates of $163 and $168 during his employment.  Thus, if he worked four days per week, he

would receive either $652 (at $163 daily rate) or $672 (at $168 daily rate); if he worked five days

per week, he would receive $815 (at $163 daily rate) or $840 (at $168 daily rate), etc.  Even if

Plaintiff had only been working four days per week at his lowest daily rate of $163 per day -- a

highly unlikely scenario if he was working 70 hours per week -- he would have been paid $652

per week, well over the minimum payment required by the FLSA.  Since Plaintiff's position was

exempt from overtime, the FLSA merely guarantees that Plaintiff will receive the minimum wage for all hours worked that are not overtime hours.  If, as Plaintiff alleges, he worked as many as 70 hours per week, he would be appropriately compensated under the FLSA at $507.50 (70 x $7.25).

Accordingly, Plaintiff cannot set forth a viable claim under the FLSA and his Complaint must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion should be granted and Plaintiff's Complaint should be dismissed in its entirety.

Dated:  December 14, 2018

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Karla Grossenbacher
     Karla Grossenbacher (Bar No. 22655)
     Leslie V. Maffeo
     975 F Street, N.W.
     Washington, DC  20004-1454
     kgrossenbacher@seyfarth.com
     (202) 463-2400
     Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that she caused a copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR FOR

SUMMARY JUDGMENT to be served upon all counsel of record through the court's electronic case

filing system on this 14th day of December, 2018:

> Joseph T. Mallon, Jr., Esq.
> Marshall N. Perkins, Esq.
> 300 East Lombard Street, Suite 815
> Baltimore, Maryland 21202
> jmallon@mallonandmccool.com
> mperkins@mallonandmccool.com
>
> *Counsel for Plaintiff*

/s/ Karla Grossenbacher
Karla Grossenbacher

52563111v.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC WIEST,

        Plaintiff,

    v.

DELAWARE VALLEY WHOLESALE
FLORIST, INC.,

        Defendant.

Civil Action No. 1:18-cv-3427-JMC

## **DECLARATION OF JENNY BASIS**

I, Jenny Basis, declare:

1.     I am the Vice President of Human Resources for Delaware Valley Floral Group, Inc. (the "Company"), and I make this declaration based on my personal knowledge and knowledge gained through my review of company records.

2.     Plaintiff, Eric Wiest was employed by the Company from approximately May 2012 until approximately April 2018 as a delivery driver.

3.     In performing his work duties, Plaintiff most often drove a Hino 16-foot box truck, which has a gross vehicle weight ("GVW") of at least 10,001 pounds.

4.     Occasionally, Plaintiff drove various Mitsubishi 16-foot box trucks, which are also over 10,000 GVW.

5.     The Company purchases floral products from all over the world, with most of our products being brought in from farms in South America into Florida.

6.     From Florida, our floral products are transported to our headquarters in New Jersey.

7.     Other product is shipped by truck from farms in California, Mexico, New York, and other locales to New Jersey.

8.     Our inventory is kept in New Jersey until it is sold.

9.     As customer orders come in, employees in New Jersey select and pack the product for its final destination.

10.     Once packed, the completed orders get sent to various distribution centers via tractor trailers.

11.     The product is offloaded, sorted, and put on to delivery trucks at the distribution centers the same day.

12.     Delivery drivers then deliver the product to the customers, which are primarily retail florists.

13.     Plaintiff drove a route that originated at a distribution center in Jessup, Maryland and covers the western peninsula of Maryland.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of December 2018.

_____
Jenny Basis